Tammy Hussin (Bar No. 155290)
HUSSIN LAW
1596 N. Coast Highway 101
Encinitas CA 92024
Tel: (877) 677-5397
Fax: (877) 667-1547
Tammy@HussinLaw.com

Attorney for Plaintiff, Alex Dakin

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT CALIFORNIA**

| | |
|---|---|
| ALEX DAKIN,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC<br><br>Defendant. | Case No.: **'19 CV 0818 GPC BGS**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the claims alleged herein raise a federal question.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, because Defendant regularly and systematically transacts business within this judicial district, and because Plaintiff resides in this judicial district.

1

## THE PARTIES

3. The Plaintiff, Alex Dakin, is an adult individual residing in the county of San Diego.

4. Defendant, BMW of North America, LLC ("BMW"), is a duly organized Delaware corporation with its principal place of business located at 300 Chestnut Ridge Road in Woodcliff Lake, New Jersey. BMW manufactures, imports, distributes and/or sells BMW motor vehicles, and also acts as the authorized representative of BMW AG within this judicial district and throughout the United States.

## BACKGROUND

5. BMW, together with its parent company BMW AG, designed and manufactured certain 2012 through and including 2015 model year BMW passenger motor vehicles equipped with the N20 direct injection turbocharged engine ("N20 Engines").

6. If BMW had designed and manufactured the N20 Engines correctly, the N20 Engine chain assemblies should last a minimum of 150,000 miles. However, the primary chain assembly in vehicles equipped with an N20 Engine are constructed of a defective plastic material, causing N20 Engines to prematurely and catastrophically fail. Specifically, the chain guide assembly is made of a defective polycarbonate composition, which over time becomes brittle and breaks into tiny pieces. These polycarbonate shavings accumulate into the oil sump, where they are sucked into and clog the oil pump pick-up screen. This event causes oil pump cavitation, causing failure of the pump to provide lubricating oil to wear/contact surfaces such as crankshaft bearings, and results in the complete failure of the engine.

7. BMW has known about N20 Engine catastrophic failure issues since 2013, and BMW began to redesign chain assembly components in an effort to correct system deficiencies that were causing N20 catastrophic engine failures.

8. While the defect appears to be cured, there remains a countless number of 2012 – 2015 BMW vehicles still in use and/or on the market which are equipped with the defective polycarbonate module. BMW not only failed to alert these vehicle owners and/or prospective owners of these vehicles that a latent defect exists. Indeed, the N20 Engine defect was fraudulently concealed and/or actively suppressed by BMW in order to protect BMW profits from loss of sales from adverse publicity, to reduce warranty repair costs, and to limit BMW's brand disparagement. Moreover, when catastrophic engine failure does occur in one of its vehicles equipped with an N20 Engine, BMW and its authorized dealerships refuse to acknowledge the defect and refuse to replace the engine, causing financial injuries to unsuspecting BMW owners.

## FACTS AS TO PLAINTIFF

9. In January of 2018, Plaintiff purchased a pre-owned 2012 BMW X-1 equipped with an N20 Engine.

10. In March of 2019, Plaintiff's vehicle experienced catastrophic engine failure. BMW's service department record stated Plaintiff's vehicle suffered: "Engine timing chain module disintegrated causing motor oil starvation." At the time of the failure, Plaintiff's vehicle had 84,900 miles. Although Plaintiff's vehicles' chain assembly failure occurred outside the unilateral express warranty period, Plaintiff's vehicle exhibited unmistakable symptoms of degradation and premature failure due to the N20 Engine defect as aforementioned.

11. Plaintiff is an ordinary vehicle purchaser and does not possess the requisite technical skills in automotive engineering to discern the design, manufacture, materials and workmanship defects in his vehicle's engine.

12. Had Plaintiff known of the serious defect in the vehicle's engine, he would not have purchased his BMW, nor would he have purchased the vehicle for the supposed retail value.

13. In purchasing his vehicle, Plaintiff relied upon material misrepresentations, fraudulent statements and/or material omissions of BMW, including but not limited to the useful and expected life of his vehicle's engine. As a result, Plaintiff had no knowledge of this serious defect until after his engine suffered a catastrophic failure.

14. Even after Plaintiff's engine failed, BMW intentionally failed to inform Plaintiff that his vehicle incorporated a serious defect that would cause his engine to prematurely fail within the reasonably expected useful life of his vehicle, and that the cause of his engine's failure was due to the faulty materials and workmanship of BMW. BMW refused to replace Plaintiff's engine, and as a result, Plaintiff incurred considerable out of pocket expense to replace his engine ($3,850.00).

15. In refusing to replace Plaintiff's engine, BMW fraudulently, intentionally, negligently and/or recklessly concealed the defects in Plaintiff's engine, even though BMW and its authorized agents knew or should have known of design, materials and manufacturing defects.

16. BMW breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed the existence of defects in Plaintiff's vehicle and omissions in accompanying owner's manual and Warranty and Maintenance pamphlet.

17. BMW's fraudulent concealment tolls any applicable statutes of limitations herein since the fraudulent misrepresentations concerning the true cause of the failure of his engine was inherently unknowable to Plaintiff given the technical nature of the vehicle design and manufacturing defects, including materials and workmanship.

18. The doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for Plaintiff's vehicle because of BMW's fraudulent conduct, including but not limited to concealment of his vehicle defect and omission of material facts. BMW fraudulently attributed the failings of Plaintiff's vehicle chain

assemblies to other factors and/or exculpating conditions for which the BMW had no responsibility.

## FIRST CLAIM FOR RELIEF
### (Violation of the Magnuson-Moss Warranty Act)

19. Plaintiff re-alleges and incorporates by reference herein each of the allegations set forth above.

20. The Magnuson-Moss Warranty Act imposes civil liability on any warrantor for, inter alia, failing to comply with any obligation under a written and/or implied warranty. 15 U.S.C. § 2310(d)(1).

21. The Act authorizes suits for damages and other legal and equitable relief and the award of attorneys' fees. 15 U.S.C. §§ 2310(d)(1), 2310(e).

22. The Vehicle is tangible personal property distributed in commerce, normally used for personal, family, or household purposes. As such, the Subject Vehicles are "consumer products" as that term is defined in 15 U.S.C. § 2301(1).

23. Plaintiff purchased his vehicle for household purposes, and therefore Plaintiff is a "consumer" as the term is defined in 15 U.S.C. § 2301(3).

24. At all relevant times, BMW has been a company engaged in the business of designing, manufacturing and selling or leasing vehicles.

25. BMW is a "warrantor" within the meaning of 15 U.S.C. § 2301(5), and the warranty is a "written warranty" as that term is defined in 15 U.S.C. § 2301(6).

26. Plaintiff and the previous owner complied with all warranty and contractual obligations including all warranty, warranty notice, maintenance and product use obligations for the vehicle, and both operated the vehicle under normal anticipated conditions in noncommercial environments.

27. By refusing to replace Plaintiff's failed engine and concealing the true causes of the engine failure, BMW breached both the written and implied warranties.

28. BMW expressly warranted to the general public, owners and lessees of older vehicles equipped with a faulty N20 engine are merchantable and fit for the ordinary purposes for which passenger vehicles are used.

29. BMW failed to remedy the defect in Plaintiff's vehicle by offering a replacement of the engine, despite the fact that were defective in materials and workmanship during the express warranty period although the defects were known to BMW at that time.

30. Due to BMW's active concealment of the defects, Plaintiff could not have reasonably discovered the defective condition of his vehicle's engine prior to the failure. As such, BMW should be estopped from asserting that statutes of limitations has expired. Given BMW's misconduct as aforementioned, the durational limitations of the warranties are oppressive, unreasonable and unconscionable.

31. By concealing the known defect from Plaintiff, and then refusing to replace the failed engine under warranty, Plaintiff suffered a distinct financial injury.

32. As a direct and proximate cause of BMW's breaches of express and implied warranties, Plaintiff has suffered actual economic damages.

33. As a result, Plaintiff is entitled to judgment against BMW for damages, interest, costs and attorneys' fees.

### SECOND CLAIM FOR RELIEF
**(Violation of the Song-Beverly Consumer Warranty Act Civil Code §1790 *et seq*.)**

34. Plaintiff re-alleges and incorporates by reference herein each of the allegations set forth above.

35. Plaintiff's vehicle is a consumer good that Plaintiff has used, bought, or leased for use in primarily personal, family or household purposes. As such, the vehicle is a "consumer product" as that term is defined in California Civil Code § 1791(a).

36. At all relevant times, BMW and its parent company has been a company engaged in the business of designing, manufacturing and selling and leasing vehicles to the general public. As such, BMW is a "manufacturer" as that term is defined in California Civil Code § 1791(j).

37. BMW's warranty is an "express warranty" as that term is defined in California Civil Code § 1791.2(a)(1).

38. Plaintiff's vehicle contained an implied warranty merchantability running from BMW to Plaintiff, pursuant to California Civil Code § 1792.

39. Plaintiff's BMW included a written 4-year/50,000 mile factory warranty with the express purpose of preserving or maintaining the utility or performance of the Vehicle or providing compensation if there is a failure in utility or performance.

40. More specifically, BMW's express warranty covers any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments or repairs would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in Plaintiff's warranty booklet, and are incorporated herein by reference as though fully set forth.

41. Due to the existence of the warranties, BMW cannot disclaim implied warranties. These warranties were part of the basis of the bargain embodied in the contracts for the purchase of Plaintiff's vehicle.

42. Notwithstanding the representation in the warranties Plaintiff's vehicle was free of any defect, Plaintiff vehicle was equipped with an engine that was later discovered to be defective in materials and workmanship, and destined to catastrophically fail prematurely.

43. As a result of the defect, Plaintiff's vehicle is not fit for the ordinary purposes for which it is used.

44. Despite being given the opportunity to replace the failed engine, BMW refused to repair the vehicle so as to bring it into conformity with the warranties set forth herein.

45. Due to BMW's active concealment of the defects in Plaintiff's vehicle, Plaintiff could not have reasonably discovered the defective condition of his vehicle's engine prior to its failure. As such, BMW should be estopped from asserting that statute of limitations was running. Given BMW's misconduct as aforementioned, the durational limitations of the warranties are oppressive, unreasonable and unconscionable.

46. As a direct and proximate result of BMW's willful violation of its obligations under the Song-Beverly Consumer Warranty Act, Plaintiff has suffered damages, including but not limited to money expended to replace the failed engine, other incidental and consequential damages, and attorneys' fees which Plaintiff has incurred and will continue to incur in order to protect his rights in this matter.

47. Under California Civil Code § 1794(d), Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorneys' fees.

### THIRD CLAIM FOR RELIEF
**(Violations of Unfair Competition Law - Business & Professions Code § 17200, *et seq*.)**

48. Plaintiff re-alleges and incorporates by reference herein each of the allegations set forth above.

49. California's Business & Professions Code § 17200 *et seq.* (the "Unfair Competition Law" or "UCL") defines unfair competition to include any unlawful, unfair or fraudulent business act or practice. Unfair competition also includes "unfair, deceptive, untrue or misleading advertising." Unfair competition also includes "unfair, deceptive, untrue or misleading advertising."

50. BMW's conduct as alleged above has been and will continue to be unlawful in that the conduct constitutes and will continue to constitute a violation of

the Song-Beverly Consumer Warranty Act, and the Magnuson-Moss Warranty Act, as alleged herein.

51. BMW's conduct as alleged above has been and will continue to be unfair in that the harm to Plaintiff and other Californians arising from BMW's conduct outweighs the utility, if any, of the conduct alleged above.

52. BMW's conduct as alleged above has been and will continue to be fraudulent and likely to deceive reasonable California consumers in that BMW has omitted and/or failed to disclose, and will continue to omit and/or fail to disclose, material facts regarding the true reasons for catastrophic engine failures in older vehicles equipped with an N20 Engine.

53. BMW had, and has, a duty to disclose these material facts, and its failure to disclose the true reason for the catastrophic engine failure as described herein constitutes deception by omission. This unfair omission of material facts is a violation of the UCL in that Plaintiff and any other reasonable California consumer would have considered them important in deciding whether or not to purchase a BMW used vehicle.

54. Had Plaintiff and/or other California consumers been informed of the latent defect, they would not have purchased BMW vehicles at the price paid or would have purchased the vehicle with a different engine.

55. BMW further violates the UCL by systematically refusing to replace the engine rather than honoring its warranty on this latent defect. This unfair practice caused distinct monetary harm to Plaintiff, and likely to other BMW purchasers throughout the state of California.

56. As a result of BMW's practices, Plaintiff and other California consumers have suffered and will continue to suffer injury in fact and lost money or property.

57. As a direct and proximate result of the acts and practices alleged above, pursuant to California Business & Professions Code §17203, Plaintiff is entitled to damages.

# **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks judgment for the following:

A. Injunctive and declaratory relief as pled or as the Court may deem proper;

B. An award of damages and restitution in favor of Plaintiff and any other California consumers similarly injured;

C. Interest as allowable by law;

D. An award of reasonable attorneys' fees as provided by applicable aforementioned laws;

E. All costs of suit; and

F. Such other and further relief as this Court deems just and proper.

DATED:  May 2, 2019                             HUSSIN LAW

By: _/s/   Tammy Hussin_
Tammy Hussin, Esq.
Attorney for Alex Dakin